IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                                    )
                                          )
BUTLER SPECIALTIES, INC., T/A             )
BUTLERBUILT MOTORSPORTS                   )
EQUIPMENT, INC.                           )          Case No: 19-50417
                                          )
         Debtor.                          )
                                          )          Chapter 11
                                          )
_____ )

**MOTION OF DEBTOR-IN-POSSESSION FOR ORDER PURSUANT TO
SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE
(I) APPROVING BIDDING AND SALE PROCEDURES IN CONNECTION WITH THE
SALE OF ASSETS, (II) APPROVING FORM OF ASSET PURCHASE AGREEMENT,
(III) SCHEDULING COMPETITIVE SALE AND SALE APPROVAL HEARING, AND
(IV) APPROVING SALE FREE AND CLEAR OF LIENS TO GOOD FAITH
PURCHASER**

Butler Specialties, Inc., Debtor-in-Possession herein (the "Debtor"), by and through its

proposed counsel, and pursuant to 11 U.S.C. §§ 105(a) and 363 and Federal Rule of Bankruptcy

Procedure 6004, moves the Court for an order or orders (I) Approving bidding and sale

procedures, (II) Approving agreement with stalking horse bidder if one is procured, (III)

Approving the Form of Asset Purchase Agreement, (IV) Scheduling competitive sale and sale

approval hearing, and (V) Approving sale free and clear of liens to good faith purchaser (the

"Motion"). In support of the Motion, Debtor respectfully represents as follows:

### I.      JURISDICTION, VENUE, and PROCEDURAL BACKGROUND

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of Debtor's Chapter 11

case and this Motion in this District is proper pursuant to 28 U.S.C. § 1408. The statutory

predicate for the relief requested is 11 U.S.C. §§ 105(a) and 365 of the United States Bankruptcy Code ("Bankruptcy Code").

## II.    FACTS

### A.    Debtor's Operations and Assets

2.    On April 23, 2019 (the "Petition Date"), Debtor commenced a case under Chapter 11 of Title 11, United States Code in this Court.  Debtor continues to operate its business and manage its properties as Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

3.    The Debtor's principal business is the manufacture of auto racing seats and accessories.

4.    No trustee or examiner has been appointed in Debtor's Chapter 11 case, and no creditors or other official committee has been appointed herein pursuant to Section 1102 or the Bankruptcy Code.

5.    The Debtor's business was adversely impacted by alleged tax fraud and embezzlement committed by an ex-officer and employee of the business to the point that it could not recover.

6.    As of the Petition Date, the Debtor's assets consist real and personal property (the "Assets") with a total value of $1,186,847.13 based on the following:

    a.  Real property worth $910,000.00 (the "Real Property Assets");
    b.  Bank accounts with a combined balance of $20,464.83;
    c.  Accounts receivable of approximately $116,822.54;
    d.  Inventory worth approximately $75,000.00; and
    e.  Office furniture and equipment worth $64,559.76 (paragraphs (b)-(e) are collectively referred to as the "Personal Property Assets").

2

7.      On July 17, 2019, this Court approved the hiring of Three Twenty-One Capital Partners, LLC ("321 Capital Partners") as investment banker to facilitate a sale under Section 363 of the Bankruptcy Code (a "363 Sale").

8.      321 Capital Partners continues to investigate the Assets of the Debtor to ensure that the maximum value will be received for the same.

9.      321 Capital Partners has not located a "stalking horse" bidder to date but continues to seek and hopes to secure the same.  If a stalking horse bidder arises, 321 Capital Partners will continue to market the Debtor's business and assets to other interested strategic buyers or investors.  In the event competitive bids are received by Debtor, a stalking horse's offer would be an opening bid at an auction sale, and other interested parties would be invited to submit competitive bids (the "Auction" or "Competitive Sale").

## B.      Debtor's Liabilities

10.      The Assets are encumbered by the security interests of the Internal Revenue Service ("IRS") and North Carolina Department of Revenue ("NCDOR").

11.      The IRS filed a proof of claim (the "IRS Claim") asserting claims totaling $3,143,733.64 including a secured claim of $1,180,685.09 that is secured by properly perfected security interests in substantially all of the Assets.

12.      The NCDOR filed a proof of claim asserting claims totaling $826,630.37 including a secured claim of $826,412.59 that is secured by properly perfected security interests in substantially all of Debtor's Assets (the "NCDOR Claim").  The IRS has superior liens to the NCDOR, and there is no value in property of the Debtor above the liens of the IRS that would secure the claim of the NCDOR.

13.     Debtor is not aware of any liens, claims, encumbrances or interests in the Assets, other than the claims and liens of the IRS and NCDOR.

## C.     Marketing Efforts

14.     Since its employment in mid-July, 321 Capital Partners has performed due diligence to investigate and familiarize itself with the Debtor's financial affairs and operations. It has begun having communications with various parties interested in purchasing the Assets.

15.     321 Capital Partners plan to launch a marketing campaign the week of August 5, 2019. It will cultivate a list of potential buyers, prepare an information presentation and sell sheet, and begin aggressively marketing the Assets for sale as a going concern.

16.     321 Capital Partners will contact any relevant media outlets concerning the sale as well.

17.     Round One of the marketing campaign will include contacting potential buyers/investors by phone, email, and posting on websites frequented by the same. Round One is expected to last approximately two weeks.

18.     Round Two of the campaign will focus on putting the prepared presentation into the hands of interested parties and providing them with detailed information about the Debtor and its Assets. This Round is expected to last approximately two weeks as well.

## D.     Stalking Horse Bid

19.     No stalking horse bid has been obtained to date, but it is early in the sale process, and the marketing campaign has not been fully implemented. 321 Capital Partners hopes to find a stalking horse bidder (a "Stalking Horse Bid").

20.     If a Stalking Horse Bid arises, the Debtor will present the terms and treatment thereof to this Court prior to the bid deadline for approval of the same.

### E.    Bidding and Sale Procedures

21.    In order to obtain the highest and otherwise best bid for the Assets and to

facilitate an orderly and effective competitive sale, the Debtor and 321 Capital Partners propose

the following bidding and sale procedures (the "Bidding and Sale Procedures").

a.    321 Capital Partners will have a marketing period ending on September 13, 2019

(the "Bid Deadline") to solicit offers for the Assets.

b.    Any person or entities wishing to participate in the Competitive Sale[1] process
shall deliver as soon as reasonably possible a properly and validly executed Confidentiality and
Non-Disclosure Agreement in the form attached as "Exhibit B" (an "NDA") to Devin Hudgins,
321 Capital Partners, 5950 Symphony Woods Road, Columbia, MD, 21044, ca@321capital.com,
or via facsimile 443-320-9225.

c.    Upon receipt of an NDA, 321 Capital Partners will determine whether an
interested purchaser qualifies to participate in the Competitive Sale (a "Qualified Bidder"). 321
Capital Partners will retain complete discretion to determine whether an interested entity is a
Qualified Bidder. At a minimum, a Qualified Bidder will have the financial wherewithal to
consummate the proposed transaction, including the willingness to provide details financial
information to 321 Capital Partners to verify such financial wherewithal.

d.    321 Capital Partners will notify an entity who has delivered an NDA regarding
whether or not the entity has been approved as a Qualified Bidder within one (1) business day
following the date upon which 321 Capital Partners has approved the same as a Qualified Bidder.

e.    If (1) there is a Stalking Horse Bid and a Qualified Bid[2] is received on or before
the Bid Deadline, or (2) there is no Stalking Horse Bid and more than one Qualified Bid is
received before the Bid Deadline, then 321 Capital Partners shall conduct a competitive sale of
the Assets (the "Competitive Sale") pursuant to these Bidding and Sale Procedures on Thursday,
September 19, 2019, at 11:00 a.m. in the office of the Nardone Law Firm, PLLC located at 241
Church Street NE, Concord, North Carolina (the "Sale Location").

f.    In order to attend the Competitive Sale, a Qualified Bidder must deliver, on or
before the Bid Deadline, (i) and executed *Asset Purchase Agreement* in a form substantially
similar to that appearing as attached "Exhibit A" (an "APA") and (ii) either a version of the
executed APA marked to show the changes against the APA attached as "Exhibit A" or an

---

[1] Competitive Sale shall mean if (1) there is a stalking horse bid and a Qualified Bid is received on or before the Bid
Deadline, or (2) there is no Stalking Horse Bid and more than one Qualified Bid is received on or before the Bid
Deadline, then 321 Capital Partners shall conduct a competitive sale of the Assets (the "Competitive Sale") pursuant
to these Bidding and Sale Procedures on Thursday, September 19, 2019, at 11:00 a.m. in the office of the Nardone
Law Firm, PLLC located at 241 Church Street NE, Concord, North Carolina (the "Sale Location").
[2] A Qualified Bid is a bid placed by a Qualified Bidder.

electronic version in Word of the executed APA to: Devin Hudgins, 321 Capital Partners, 5950 Symphony Woods Road, Columbia, MD, 21044, ca@321capital.com.

      g.     321 Capital Partners shall retain complete discretion to determine whether any APA submitted qualifies as a Qualified Bidder to participate in the Competitive Sale (a "Qualified Bid"). At a minimum, a Qualified Bid must have the following characteristics, unless otherwise ordered by the Court:

(i)     Is timely submitted on or before the Bid Deadline;

(ii)    Makes adequate representations and warranties regarding the Qualified Bidder's affiliation or relationship with the Debtor, any insider(s) of the Debtor, or any creditor(s) of the Debtor;

(iii)   Requires the Qualified Bidder to make a good faith deposit in the amount equal to ten percent (10%) of the total consideration to be paid for the assets to be purchased by the Qualified Bidder;

(iv)   Warrants that it is not subject to any additional due diligence, any financing contingencies, or any further board or similar corporate approval;

(v)    Provides that it is irrevocable by the Qualified Bidder until three (3) days after a Court order approving a sale of the assets pursuant to which the Qualified Bidder does not hold the "Winning Bid" or "Back-Up-Bid"[3];

(vi)   Commits to a closing on the purchase as soon as possible after entry of an order approving the sale, but not later than three (3) business days after such order has become a final order (the "Closing").

(vii)  Acknowledges that the sale is "as-is, where-is" with no warranties express or implied by the Debtor or 321 Capital Partners;

(viii) Represents and warrants to the Debtor and 321 Capital Partners that the Qualified Bidder (A) has relied solely upon the Qualified Bidder's own independent review, investigation, and/or inspection of the assets in making the bid and (B) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law or otherwise, by the Debtor or 321 Capital Partners regarding the assets;

(ix)   Includes no breakup fee, expense reimbursement, or similar payment obligation;

(x)    Must be on substantially similar terms as, or better terms than, the APA and must specify whether the purchase is for the Assets or the Real Property Assets or Personal Property Assets separately; and

(xi)   Must allocate the propose purchase price among the Real Property Assets or Personal Property Assets.

---

[3] 321 Capital Partners shall select the successful bid (the "Winning Bid") and a back-up bid (the "Back-Up Bid") during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid, and the holder thereof (the "Winning Bidder"), and a Back-Up Bid, and the holder thereof (the "Back-up Bidder").

h.      All due diligence shall be completed prior to the Bid Deadline, such that all bids at the Competitive Sale will be free of all contingencies other than the Court's approval of the sale free and clear of liens, with any liens transferring to the sale proceeds. Subject to execution of the NDA, 321 Capital Partners shall provide potential bidders with any and all documents requested prior to the Bid Deadline that are in its possession or readily available to it. 321 Capital Partners shall not be obligated to furnish access to any information of any kind whatsoever regarding the Assets after the Bid Deadline.

i.      After a Qualified Bidder submits an APA, 321 Capital Partners may, in its complete discretion, communicate with the Qualified Bidder and request any additional information deemed necessary to evaluate whether the bid should be accepted as a Qualified Bid.

j.      321 Capital Partners will send, on or before September 16, 2019, a written Competitive Sale invitation to all Qualified Bidders, if more than one Qualified Bidder participated in the bidding, who submitted a Qualified Bid. 321 Capital Partners shall disclose all Qualified Bids to any stalking horse bidder.

k.      If there is no stalking horse bid and only one Qualified Bid is received, the one Qualified Bid will be the "Winning Bid" and the Debtor will seek Court approval of the sale to the one Qualified Bidder pursuant to Section 363 of the Code at a hearing on or prior to October 1, 2019, subject to the Court's availability.

l.      If more than one Qualified Bid is received, 321 Capital Partners shall conduct a Competitive Sale on September 19, 2019 at the Nardone Law Firm, PLLC, 241 Church Street NE, Concord, North Carolina at 11:00 a.m.

m.      Except as otherwise provided herein, only Qualified Bidders submitting Qualified Bids and any stalking horse are eligible to participate in and attend the Competitive Sale. All Qualified Bidders wishing to bid at the Competitive Sale shall appear and participate at the Competitive Sale – either in person or telephonically – through a duly authorized representative. On or before September 17, 2019, all holders of Qualified Bids shall notify 321 Capital Partners in writing or the name and relationship to the Qualified Bidder or any representative who will appear at the Competitive Sale on the Qualified Bidder's behalf and a certification that the identified representative will have the full authority to bid at the Competitive Sale on behalf of the Qualified Bidder, provided, however, that 321 Capital Partners will have the ability to exclude any identified representative that 321 Capital Partners reasonably believes would be disruptive to the Competitive Sale process.

n.      Other than Qualified Bidders and their representatives, the only parties permitted to attend the Competitive Sale are the IRS and the IRS's counsel, the NCDOR and the NCDOR's counsel, 321 Capital Partners representative(s), and the Debtor's counsel.

o.      Prior to the Competitive Sale, 321 Capital Partners will select the Qualified Bid that it determines best reflects the highest or otherwise best value for the Assets, Real Property

7

Assets and/or Personal Property Assets as the Competitive Sale's opening bid.  321 Capital Partners shall then commence the Competitive Sale by announcing the opening bid.

p.      Thereafter, Competitive Sale participants may submit bids that are higher and better than a prior bid in increments of at least $10,000.00 until 321 Capital Partners selects a successful bid; provided, however, that 321 Capital Partners shall retain complete discretion to adjust the overbid increments upward or downward during the Competitive Sale.

q.      321 Capital Partners may adjourn the Competitive Sale and/or adopt supplemental Competitive Sale rules or procedures in order to facilitate a more effective Competitive Sale.

r.      321 Capital Partners shall select the successful bid (the "Winning Bid") and a back-up bid (the "Back-Up Bid") during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid, and the holder thereof (the "Winning Bidder"), and a Back-Up Bid, and the holder thereof (the "Back-up Bidder").

s.      Subject to the Court's availability, the Court will conduct a hearing to consider whether to approve the sale pursuant to Section 363 of the Code on Tuesday, October 1, 2019 at 2:00 p.m. in the United States Bankruptcy Court, 601 West 4th Street, Suite 100, Winston-Salem, North Carolina.  Any objections to the sale of the Assets, Real Property Assets and/or Personal Property Assets other than any objection based on the Winning Bid amount or based on any other conduct of the Competitive Sale shall be filed with the Court on or before September 25, 2019.

t.      If the Court approves a sale based on the Winning Bid, then the Winning Bidder shall close on the purchase no later than three (3) business days following the sale order becoming a final, non-appealable order, with the understanding that the Winning Bidder and 321 Capital Partners shall make all reasonable efforts, but not be required, to consummate the sale on or before the tenth (10th) day following entry of an order approving the sale.  If the Winning Bidder fails to consummate the purchase, then the Back-Up Bidder shall close on the purchase no later than twenty (20) days after entry of an order approving the sale becoming a final, non-appealable order.

u.      Whichever of the Winning Bidder and Back-Up Bidder actually completes the purchase of the Assets, Real Property Assets and/or Personal Property Assets shall have thirty (30) days following the Closing to notify 321 Capital Partners of any executory contracts such purchaser wishes to assume in connection with the purchase, and all actions reasonably necessary to assume and assign said contracts pursuant to Section 365 of the Code shall be taken.

22.      The Debtor reserves the right to seek all available damages from the Winning Bidder or the Back-Up Bidder if such bidder wrongfully fails to consummate the purchase pursuant to these Bidding and Sale Procedures, except as otherwise agreed by 321 Capital Partners.

8

23.     The Debtor proposes to transfer assets free and clear of all liens, with any liens transferring to the sale proceeds, pursuant to Section 363 of the Code, to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court.

### F.     Proposed Notice Procedure

24.     Upon entry of an order approving this Motion, the Debtor or 321 Capital Partners will serve notice of the Bidding and Sale Procedures (the "Sale Notice") in the form attached hereto and incorporated by reference as "Exhibit C," as follows:

      a.     Upon the Bankruptcy Administrator and those parties requesting notice via ECF pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure via ECF;

      b.     Upon the creditor mailing matrix in this Case via U.S. mail, postage prepaid;

      c.     Upon any party interested in purchasing the assets for whom the Debtor and/or 321 Capital Partners have a valid electronic mail address by electronic mail only.

### G.     General Terms of the Sale and Asset Purchase Agreement

25.     Summary of Important Dates.

| | |
|---|---|
| **September 13, 2019** | **Bid Deadline** |
| **September 17, 2019** | **Sale Participation Deadline** |
| **September 19, 2019** | **Auction to be conducted in the office of Nardone Law Firm, 241 Church St. NE, Concord, North Carolina 28025** |
| **September 25, 2019** | **Objection Deadline** |
| **October 1, 2019** | **Court hearing to approve Sale** |

26.     The general terms of the Asset Purchase Agreement are summarized below.  The reader and any prospective purchaser of the Assets are urged to read and review the Asset

9

Purchase Agreement in its entirety for a complete and thorough understanding of all its terms and conditions.

       a. <u>Assets To Be Sold.</u>  The Assets to be sold are substantially all of Debtor's realty, inventory, accounts, receivable, vehicles, furniture, fixtures and equipment, its intellectual property, its miscellaneous tangible personal property, and other intangible assets, all as particularly defined in the Asset Purchase Agreement ("Assets"), and described in detail in the Asset Purchase Agreement and its Exhibits attached thereto.

          i.     The Real Property Assets and Personal Property Assets may be sold together or separately.  Collectively they are referred to as the "Assets."

       b.     <u>Court Approval</u>.  The sale contemplated herein is subject to Court approval of the terms of the Asset Purchase Agreement and of the Sale Bidding Procedures, and contemplates an order approving the same and authorizing and scheduling the Competitive Sale (the "Sale Procedures Order" attached hereto and incorporated herein as "Exhibit D").

       c.     <u>Closing</u>.  A closing shall take place within three (3) business days of the date after the order approving the sale of the Assets becomes a final non-appealable order (such order being the "Final Sale Order").

       d.     <u>No Financing Contingency.</u>  The sale contemplated by the Asset Purchase Agreement is not subject to the Winning Bidder's ability to obtain financing.

       e.     <u>No Due Diligence Contingency</u>.  The sale contemplated by the Asset Purchase Agreement is not subject to the Winning Bidder's completion of further due diligence.

       f.     <u>No Debt Assumption</u>.  Except as otherwise stated in the Asset Purchase Agreement, no assumption of liabilities is associated with the sale contemplated herein.

g.      <u>No Liens</u>.  The Asset Purchase Agreement provides that the Assets shall be sold free and clear of any liens, encumbrances and other interest or claims, with all such interests and claims being transferred to the proceeds of sale to the same extent and with the same validity and priority as existed immediately prior to the closing of the sale of the Assets.

h.      <u>No Representation or Warranties</u>.  The Assets are being sold "as is" and "where is" and Winning Bidder acknowledges and agrees that, except as otherwise expressly provided in the Asset Purchase Agreement, Debtor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assets.  This includes any representation as to the merchantability or fitness of the Assets for any particular purpose.  Without in any way limiting the foregoing, the Debtor hereby disclaims any warranty, expressed or implied, of merchantability or fitness for a particular purpose as to any portion of the Assets. The Winning Bidder further acknowledges that said party has conducted an independent inspection and investigation of the physical condition of the Assets and all such matters relating to or affecting the Assets as said party deems necessary or appropriate to the extent that they desire such.  Except as otherwise expressly provided in the Asset Purchase Agreement, Winning Bidder will accept the Assets at closing "as is" and "where is."

i.      <u>Certain Fees</u>.  The Debtor was authorized to employ 321 Capital Partners as Investment Banker to facilitate a Section 363 Sale pursuant to the terms of an Agreement entered into between 321 Capital Partners and the Debtor that sets forth certain fees 321 Capital Partners shall be entitled to receive upon completion of the Sale.  The Debtor will seek approval from the Court for fees to be paid to 321 Capital Partners.

### III.    RELIEF REQUESTED

27.     The Debtor seeks authority to sell the Assets as set forth herein above pursuant to Section 363 of the Bankruptcy Code, after which Debtor may file a Plan of Liquidation which shall classify and treat claims against Debtor's estate or convert this proceeding to a Chapter 7 proceeding.

28.     The Debtor seeks entry of an Order by the Court:

   a.     Approving the Bidding and Sale Procedures;
   b.     Approving the form and manner of the Sale Notice;

   c.     Authorizing the Debtor and 321 Capital Partners to engage in any and all conduct necessary or appropriate to carry out the Bidding and Sale Procedures;

   d.     Scheduling a Competitive Sale for 11:00 a.m. on September 19, 2019 at the Sale Location *if* more than one Qualified Bid is placed;

   e.     Scheduling a hearing to hear any objections to the sale proposed herein or to determine if the sale should be approved for October 1, 2019 at 2:00 p.m. (or such other date or time amenable to the Court), whereby the Court will consider whether to authorize the sale of the Real Property, Personal Property, and/or Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court;

   f.     Authorizing 321 Capital Partners and/or the Debtor to sell the Real Property, Personal Property, and/or Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity and priority as existing as of the date of the sale pending further order of the Court; and

   g.     Establishing September 25, 2019 as the deadline to object to the proposed sale.

## IV.     ARGUMENT

29.     Pursuant to 11 U.S.C. §§ 363(b) and (f), the Debtor's interest in the Assets may be sold free and clear of any interest in such property of an entity, other than the estate, if either the entity consents or if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  Section 1107 empowers the Debtor to act under

Section 363(b) and (f) to compel the sale of the Assets free and clear of the liens and transfer the liens to the proceeds.

30.    Section 363(f) provides that a sale under § 363(b) may be accomplished free and clear of any interest in the subject property if (a) such entity consents, (b) such interest is in a bona fide dispute, or (c) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. § 363(f)(2), (4), & (5).

31.    Bankruptcy Rule 6004(f)(1) authorizes sales of property of the bankruptcy estate outside of the ordinary course of business to be by private sale or by public auction. *See* Fed. R. Bankr. P. 6004(f)(1).

32.    Courts routinely recognize the premise that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are thus appropriate in bankruptcy sales. *See, e.g., In re Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991).

33.    The Debtor believes that selling the Assets pursuant to the terms set forth herein form a reasonable process to sell the Assets.

34.    The Debtor believes that selling the Assets pursuant to the Bidding and Sale Procedures in accordance with this Motion will ensure a fair and reasonable process that is likely to yield the maximum value for the Assets.

35.    The Debtor believes that the form and manner of the Sale Notice fully complies with Bankruptcy Rule 2002 and is reasonably calculated to provide timely and adequate notice of the proposed sale of the Assets to the Debtor's creditors and all parties-in-interest that are entitled to notice in this case, as well as any parties known or discovered by 321 Capital Partners to be interested in purchasing the Assets.

WHEREFORE, the Debtor respectfully requests this Court enter an Order as follows:

1.   Granting this Motion;

2.   Approving the Bidding and Sale Procedures;

3.   Approving the form and manner of the Sale Notice;

4.   Authorizing the Debtor and/or 321 Capital Partners to engage in all conduct necessary or appropriate to carry out the Bidding and Sale Procedures;

5.   Scheduling the Competitive Sale for 11 a.m. on September 19, 2019 at the Sale Location;

6.   Scheduling a hearing on any objections to the proposed sale or to determine if the sale should be approved on October 1, 2019 at 2:00 p.m. or such other date or time amenable to the Court, whereby the Court will consider whether to authorize the sale of the Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court;

7.   Authorizing the Debtor to sell the Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court;

8.   Determining that any Qualified Bidder that holds the highest bid to be a good faith purchaser under § 363(m) of the Code and granting such holder all of the protections provided thereby; and

9.   Granting such other relief as the Court shall deem just and proper.

This the 5th day of August, 2019.

/s/ Kristen S. Nardone
KRISTEN S. NARDONE
N.C. Bar No. 28063
Attorney for the Debtor

OF COUNSEL:

Nardone Law Firm, PLLC
PO Box 1394
Concord, NC  28026-1394
704-784-9440

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:

BUTLER SPECIALTIES, INC., T/A )
BUTLERBUILT MOTORSPORTS )
EQUIPMENT, INC. )    Case No: 19-50417
)
      Debtor. )
)    Chapter 11
)

## CERTIFICATE OF SERVICE

    The undersigned certifies that on the below date a copy of the **MOTION OF DEBTOR-IN-POSSESSION FOR ORDERS PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE (I) APPROVING BIDDING AND SALE PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS, (II) APPROVING FORM OF ASSET PURCHASE AGREEMENT, (III) SCHEDULING COMPETITIVE SALE AND SALE APPROVAL HEARING, AND (IV) APPROVING SALE FREE AND CLEAR OF LIENS TO GOOD FAITH PURCHASER** was served on the following individuals electronically, when applicable, or by depositing the same in a prepaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, addressed as follows:

William P. Miller
Bankruptcy Administrator

Internal Revenue Service
Nathan Strup, Esq.

North Carolina Department of Revenue
Ronald Williams, Esq.

Butler Specialties, Inc.
Brian T. Butler
P.O. Box 1270
Harrisburg, NC 28075

U.S. Attorney's Office
Middle District of North Carolina
Attn: Nathan Strup, Asst. U.S. Attorney
101 S. Edgeworth St., 4th Floor
Greensboro, NC 27401

NC Department of Justice
c/o Attorney General's Office
Attn:  Ronald Williams, Esq.
9001 Mail Service Center
Raleigh, NC  27699-9001

All creditors on attached matrix.

This the 5th day of August, 2019.

/s/ Kristen S. Nardone
KRISTEN S. NARDONE
NC Bar No. 28063

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                              )
                                    )
BUTLER SPECIALTIES, INC., T/A       )
BUTLERBUILT MOTORSPORTS             )
EQUIPMENT, INC.                     )          Case No. 19-50417
                                    )
        Debtor.                     )
_____)

## MATRIX

William P. Miller
Bankruptcy Administrator

Internal Revenue Service
Nathan Strup, Esq.

North Carolina Department of Revenue
Ronald Williams, Esq.

Bulter Specialties, Inc.
PO Box 1270
Harrisburg, NC 28075

Airgas USA, LLC
PO Box 9249
Marietta, GA 30065-2249

Amber N. Debevec
36 Douglas Ave. NW
Concord, NC 28025-4568

Barbara Butler
8263 Addison Dr.
Harrisburg, NC 28075-9664

Benfeild Sanitation
282 Scotts Creek Rd.
Statesville, NC 28625

Bobby D. Hall
6331 Kluttz Rd.
Concord, NC 28025-7396

Brian T. Butler
5315 Kim St. SW
Harrisburg, NC 28027-3905

Cabarrus County Tax Collector
PO Box 707
Concord, NC 28026-0707

Christopher A. Ferguson
106 Dawn Dr.
Mount Holly, NC 28120-9557

City of Concord
35 Cabarrus Ave W
Concord, NC 28025

Colonial Life & Accident Insurance Co
PO Box 1365
Columbia, SC 29202-1365

Credit Bureau
Attn: Officer or Managing Agent
PO Box 26140
Greensboro, NC 27402-6140

Darrell E. Laney
2416 Community Park Dr.
Matthews, NC 28104-5022

Debbie L. Helms
5315 Kim St. SW
Concord, NC 28027-3905

Duke Energy
PO Box 1245
Charlotte, NC 28201-1245

Employment Security Commission
PO Box 26504
Raleigh, NC 27611-6504

Eric T. Speas
4188 Barrier Rd.
Concord, NC 28025-7355

Federal Express
PO Box 332
Memphis, TN 38101-0322

Gary J. Plattenberger
5822 Will Plyer Rd.
Waxhaw, NC 27611-6504

IRS
PO Box 7346
Philadelphia, PA 19101-7346

Jack E. Gross
3754 Fieldcrest Circle
Concord, NC 28027-6602

Jason S. Dease
4000 Feather Street
Concord, NC 28025-5942

Kyle A. Ashleman
2930 Planer Terrace
Gastonia, NC 28054-4956

Lime Energy
4 Gateway Center, 4th Floor
100 Mulberry St.
Newark, NJ 07102-4056

Michael E. Nelson
2235 North Enochville Ave.
Mooresville, NC 28115-7280

NC Department of Revenue
Bankruptcy Unit
PO Box 1168
Raleigh, NC 27602-1168

National Liability & Fire
PO Box 113247
Stamford, CT 06911-3247

Oak Pointe Leasing Corporation
3330 Monroe Rd.
Charlotte, NC 28205-7733

PSNC
Recovery Specialist
PO Box 60553
Oklahoma, OK 73146-0553

Quench Water
630 Allendale Road, Suite 200
King of Prussia, PA 19406-1418

Romney D. Sellers
6414 Mooresville Rd.
Kannapolis, NC 28081-8707

Spencer R. Knight
7702 Jenny Ann Dr.
Charlotte, NC 28216-8024

Standard Insurance Company
521 E. Morehead St., #425
Charlotte, NC 28202-2695

Steven G. Intravaia
814 Laurel Street
China Grove, NC 28023-9414

UPS Freight
5204 N. Graham St.
Charlotte, NC 28269-4831

US Attorney's Office
101 South Edgeworth St., 4th Floor
Greensboro, NC 27401-6045

US Capital Insurance Co.
564 Market St., Suite 700
San Francisco, CA 94104-5415

United States Postal Service
Attn: Receivables Section
Accounting Service Center
2825 Lone Oak Pkwy
Saint Paul, MN 55121-9612

Wallace C. Wright
5208 Teakwood Dr.
Kannapolis, NC 28083-8684

Windstream
1720 Galleria Blvd.
Charlotte, NC 28270-2408

## ASSET PURCHASE AGREEMENT GENERAL PROVISIONS

Seller:                       321 Capital Partners, LLC as Investment Banker for Butler Specialties, Inc. T/A Butler Built Motorsports Equipment, Inc, Chapter 11 Debtor

Seller's Address:            5950 Symphony Woods Road, Columbia, MC 21044

Seller's Email Address:      ca@321capital.com

Execution Date:            _____

Buyer:                      _____

Assets Purchase Price:       _____

Priority Wage Claim Amount: _____

Total Purchase Price:        _____

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (this "Agreement") is entered into by and among: Butler Specialties, Inc. T/A Butler Built Motorsports Equipment, Inc. (the "Debtor"); the person or entity indicated as the "Buyer" in the *Asset Purchase Agreement General Provisions* (the "General Provisions") appearing above and/or such person's or entity's successor(s) or assign(s) ("Buyer") and the person signing this agreement as the "Buyer's Control Person" ("Buyers Control Person"). Each of the Seller, Buyer and Buyer's Control person may be sometimes referred to in this Agreement as a "Party" and collectively as the "Parties".

## RECITIALS:

**WHEREAS,** the Debtor is in the business of manufacturing and selling racing seats and accessories.

**WHEREAS,** on April 23, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Unites States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq* (the "Bankruptcy Code"), initiating case number 19-50417 before the Bankruptcy Court (the "Bankruptcy Case");

**WHEREAS**, The Bankruptcy Court appointed Seller as the Debtor's Investment Banker pursuant to a written Order entered in the Bankruptcy Case on July 17, 2019;

**WHEREAS**, as of the Petition Date, the Debtor owned certain real property (the "Real Property") and personal property (the "Personal Property") collectively the "Assets";

**WHEREAS** the Internal Revenue Service and North Carolina Department of Revenue assert, as of the Petition Date, a lien in favor of each of them encumbering the Assets;

**WHEREAS**, pursuant to Bankruptcy Code §§ 363, 1106, and 1108, among others, the Debtor has the right and authority to operate the Debtor's business, oversee the Debtor's financial affairs, and use, sell, lease, or otherwise dispose of the Debtor's Assets.

**WHEREAS**, Buyer desires to buy, and Seller desires to sell, certain related assets on the terms and conditions set forth herein;

**NOW THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    *Definitions and Interpretation:* Unless the context otherwise clearly indicates, in this Agreement: (a) the singular includes the plural; (b) "includes" and "including" are not limiting; (c) "may not" is prohibitive and not permissive; and (d) "or" is not exclusive. Notwithstanding, the following terms used in this Agreement shall have the following meanings.

1.1    "Acquired Assets" means all assets of the Seller but may be specified by Buyer to be limited to the Real Property Assets or Personal Property Assets if set forth specifically herein in writing.  If no specification is indicated, without limiting the generality of the foregoing, the Acquired Assets shall include: Real property described as 70 Pitts School Road, Concord, North Carolina (the "Real Property" or "Real Property Assets"), and inventory, accounts, receivable, vehicles, furniture, fixtures and equipment, its intellectual property, its miscellaneous tangible personal property, and other intangible assets (the "Personal Property Assets").

1.2    "Acquisition Proposal" means a definitive proposal (other than by Buyer or its affiliates) relating to any merger, consolidation, business combination, sale or other disposition of all or any portion of the Acquired Assets pursuant to a transaction, the sale of all or substantially all of the outstanding shares of capital stock or equity interests of Debtor (including by way of a tender offer, foreclosure or plan of reorganization or liquidation) or a similar transaction or business combination.

1.3    "Back-Up- Bidder" shall have the meaning ascribed to in the Bidding Procedures Order.

1.4    "Bankruptcy Case" shall mean MDNC case number 19-50417.

1.5    "Bankruptcy Code" shall be the United States Bankruptcy Code.

1.6    "Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of North Carolina.

1.7    "Bidding Procedures Order" means the order of the Bankruptcy Court, in the form attached hereto as <u>Exhibit D</u>.

1.8    "Business" shall mean the Debtor's business of manufacturing and selling racing seats and accessories.

1.9    "Closing" means the occurrence of all acts necessary to consummate the transaction contemplated by this Agreement.

1.10    "Closing Date" means the date upon which the Closing occurs' *provided, however,* that the Closing Date shall occur no later than three (3) business days following the Sale Order becoming a Final Order, with the understanding that the Parties shall make all reasonable efforts, but not be required, to complete the Closing on or before the tenth (10th) day following entry of the Sale Order, except as otherwise provided in this Agreement.

1.11    "Competitive Sale" shall mean if (1) there is a stalking horse bid and a Qualified Bid is received on or before the Bid Deadline, or (2) there is no stalking horse bid and more than one Qualified Bid is received on or before the Bid Deadline, then 321 Capital Partners shall conduct a competitive sale of the Assets (the "Competitive Sale") pursuant to these Bidding and Sale Procedures on Thursday, September 19, 2019, at 11:00 a.m. in the office

of the Nardone Law Firm, PLLC located at 241 Church Street NE, Concord, North Carolina (the "Sale Location").

1.12    "Encumbrance" shall mean any mortgage, pledge, lien, security interest, charge, or claim against, or other interest of any type, and the term interest shall be given the broadest possible meaning for purposes of Section 363(f) of the Bankruptcy Code.

1.13    "Escrow Agent" shall mean Nardone Law Firm, PLLC, or such other escrow agent that many be mutually agreed upon by Buyer and Seller.

1.14    "Execution Date" means the date of Buyer's execution of this Agreement.

1.15    "Final Order" means an Order as to which the time to file an appeal, a motion for rehearing or reconsideration or a petition for writ of certiorari has expired and no such appeal, motion or petition is pending.

1.16    "Good Faith Deposit" means a dollar amount equal to ten percent (10%) of the Purchase Price.

1.17    "Material Adverse Change" means, any event, change, condition or matter that, individually or in the aggregate is or would reasonably be expected to materially impair the value of the Acquired Assets or results in a material adverse effect or change in the operation, condition (financial or otherwise) of the Acquired Assets or the Business, taken as a whole.

1.18    "NDA" means the *Confidentiality and Non-Disclosure Agreement* executed by Buyer and Seller in connection with the transactions contemplated herein but prior to execution of this Agreement.

1.19    "Outside Date" means October 18, 2019.

1.20    "Priority Wage Claims" means all claims in the Bankruptcy Case made by or on behalf of the Debtor's current employees for past-due wages and reimbursable medical expenses entitled to priority pursuant to § 507(a)(4) of the Bankruptcy Code.

1.21    "Purchase Price" means the amount Buyer proposes to pay for the Real Property Assets and/or Personal Property Assets.

1.22    "Sale Approval Date" means the date that the Bankruptcy Court enters the Sale Order; *provided, however*, that in the event a stay of the Sale Order pending appeal has been entered prior to the Closing Date, then the Sale Approval Date shall be deemed to have not occurred.

1.23    "Sales Order" means an order entered by the Bankruptcy Court pursuant to Sections 363 and 365 of the Bankruptcy Code, in form and substance acceptable to Buyer in its reasonable discretion which order shall, amongst other approvals, approve the sale of the

Acquired Assets to Buyer free and clear of all Encumbrances pursuant to Section 363 (f) of the Bankruptcy Code and which order shall include the determination that Buyer is a good faith purchaser for purposes of Section 363 (m) of the Bankruptcy Code.

1.24   "Titled Vehicles" means all of the Debtor's right, title and interest in and to those certain titled motor vehicles identified as a 2002 GMC Van and 2010 Lexus SUV.

1.25   Transaction Documents" means this Agreement and any document required to be executed to consummate the transaction contemplated by this Agreement.

2.   **Effectiveness of Agreement**: The terms and provisions of this Agreement shall be subject to the condition precedent of approval by the Bankruptcy Court. Except as otherwise provided herein, this Agreement shall be irrevocable by Buyer.

3.   **Asset Sale**: Subject to the terms and conditions set forth herein, on the Closing Date, Buyer shall remit the Purchase Price to Seller, and Seller shall sell, assign, transfer, convey, and deliver to Buyer, and Buyer shall purchase from Seller, the Acquired Assets, and all rights of any nature arising thereunder or related thereto, to Buyer, AS IS, WHERE IS, WITH ALL FAULTS, and WITHOUT RECOURSE, WARRANTY OR REPRESENTATION (except as expressly set forth herein), to the extent set forth in the Sale Order, free and clear of all claims, liens, and encumbrances, with such claims, liens, and encumbrances attaching to the proceeds of the sale to the same extent, validity, and priority as existing with respect to the Acquired Assets immediately before the Closing.

4.   **No Liabilities/Assumption of Liabilities**: Other than the Assumed Liabilities, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created.

5.   **Bill of Sale**: At Closing, Seller shall deliver to Buyer a duly-executed bill of sale substantially in the form appearing as Exhibit E attached hereto evidencing the conveyance of Seller's right, title, and interest in and to the Fixed Assets and Titled Vehicles to Buyer.

6.   **Titled Vehicles Titles:** At Closing, Seller shall deliver to Buyer original titles to each of the Titled Vehicles properly endorsed to Buyer.

7.   **Physical Possession of Tangible Assets:** At Closing, Seller shall deliver to Buyer physical possession of all of the Acquired Assets capable of passing by delivery with the intent that title in such Acquired Assets shall pass by and upon delivery.

8.   **Payment of Purchase Price**: Buyer shall pay Seller the Purchase Price as follows:

8.1   Within one (1) business day of the Execution Date, Buyer shall pay the Good Faith Deposit to the Escrow Agent. The Good Faith Deposit shall be applied to the Purchase Price at Closing or otherwise disbursed by the Escrow Agent in accordance with the provisions of this Agreement.

8.2     In the event any Acquired Asset having an aggregate value of $10,000 or more is lost or destroyed prior to the Closing Date, then the Purchase Price shall be reduced by any such asset's replacement value, as mutually agreed upon by the Parties in their reasonable discretion.

8.3     On the Closing Date, Buyer shall pay Seller an amount equal to the full Purchase Price, less the Good Faith Deposit (and any reduction for lost or destroyed Acquired Assets as set forth above), by wire transfer in immediately available funds to an account designated in writing by Seller, and the Good Faith Deposit shall be delivered to Seller. Each party shall pay its own expenses, taxes, and other costs incident to or resulting from this Agreement, whether or not the transaction contemplated hereby is consummated.

8.4     If the Bankruptcy Court enters a sale approval order that fails to qualify as the Sale Order and Buyer is not the Back-Up Bidder identified in such order, then Seller's obligation to close the sale shall be null, void, and unenforceable, and Seller shall return the Good Faith Deposit to Buyer within three (3) business days of the entry of such order.

8.5     Notwithstanding any of the foregoing to the contrary, in the event Buyer is the Back-Up Bidder and the party holding the winning bid fails to close by the corresponding deadline provided in the sale approval order, then the Closing Date shall be the tenth (10th) day after such deadline or on such earlier day mutually agreed upon by the Parties; provided that the Closing Date shall not occur after the Outside Date without Buyer's consent.

9.     *Executory Contracts*: With respect to any contract that is not assumed and assigned to Buyer as of the date of this Agreement, then provided that such contract has not been rejected by Seller pursuant to Section 365 of the Bankruptcy Code, upon written notice(s) from Buyer within sixty (60) days following the Closing of Buyer's desire to assume such contract, Seller shall take all actions reasonably necessary to assume and assign to Buyer pursuant to Section 365 of the Bankruptcy Code any contract(s) set forth in Buyer's notice(s); provided, that any applicable cure cost shall be satisfied by Buyer. Seller agrees and acknowledges that it shall provide Buyer with reasonable advance notice of any motion(s) to reject any contract.

10.     *Seller's Representations and Warranties*: Seller hereby represents and warrants to Buyer that the following statements are true and correct as of the date hereof.

10.1     No approval, consent, license, permit, waiver, or other authorization is required in connection with the execution or delivery by Seller of this Agreement.

10.2     No broker, finder or other person is or shall be entitled to any commissions or finder's fees in connection with the transactions contemplated hereby by reason of any action taken by Seller other than 321 Capital Partners, LLC.

10.3     To the best of Seller's actual knowledge, the Debtor has good and marketable title to, or a valid leasehold interest in or all rights to use, all Acquired Assets, subject only to Encumbrances which shall be released from the Acquired Assets and attach to the

proceeds thereof pursuant to the Sale Order. To the best of Seller's actual knowledge, subject to the entry of the Sale Order and completion of the Closing, Buyer shall have the right to use all of the Acquired Assets free and clear of any Encumbrances.

10.4    Upon entry of the Sale Order, Seller shall have the necessary power and authority to transfer the Acquired Assets to Buyer free and clear of any and all claims, liens, charges, encumbrances, and interests whatsoever.

10.5    To the best of Seller's actual knowledge, other than the Bankruptcy Case or as identified in the schedules filed in the Bankruptcy Case, there is no claim, action, suit, proceeding, or governmental investigation of any nature pending or, to Seller's knowledge, threatened against or by Seller (a) relating to or affecting the Acquired Assets; or (b) that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement. No event has occurred or circumstances exist that may give rise to, or serve as a basis for, any such action, to the best of Seller's actual knowledge.

10.6    Subject to any necessary authorization from the Bankruptcy Court, Seller has full power and authority to execute and deliver the Transaction Documents to which it is a party and to consummate the transactions contemplated hereby and thereby. No other corporate or organizational proceedings on the part of Debtor or Seller are necessary to approve and authorize the execution and delivery of the Transaction Documents to which Seller is a party and the consummation of the transactions contemplated thereby. Subject to any necessary authorization from the Bankruptcy Court, all Transaction Documents to which Seller is a party have been duly executed and delivered by Seller, except such Transaction Documents that are required by the terms hereof to be executed and delivered by Seller after the date hereof, in which case such Transaction Documents will be duly executed and delivered by Seller at or prior to the Closing, and, subject to any necessary authorization from the Bankruptcy Court, all Transaction Documents constitute, or will constitute, as the case may be, the valid and binding agreements of Seller, enforceable against Seller in accordance with their term.

10.7    EXCEPT AS EXPRESSLY SET FORTH IN THIS SECTION, SELLER MAKES NO, AND NO PARTY SHALL BE ENTITLED TO RELY UPON, REPRESENTATIONS OR WARRANTIES AS TO ANY FACT OR MATTER ABOUT THE ASSETS OR SELLER, AND SELLER HEREBY DISCLAIMS ALL SUCH WARRANTIES AND REPRESENTATIONS. THE ASSETS ARE BEING SOLD WITHOUT RECOURSE TO SELLER. WITHOUT LIMITING THE FOREGOING, THERE IS NO WARRANTY RELATING TO TITLE, POSSESSION, QUIET ENJOYMENT, FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, OR THE LIKE IN CONNECTION WITH THIS SALE.

11.    ***Buyer's Representations and Warranties:*** Buyer hereby represents and warrants to Seller that the following statements are true and correct as of the date hereof.

11.1     Buyer is duly organized, validly existing, and in good standing under the laws of Buyer's State of organization or incorporation. Buyer has the legal right and authority to execute and deliver this Agreement and perform Buyer's obligations hereunder. The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly and validly authorized, and no other proceedings or approvals on the part of Buyer are necessary to authorize this Agreement or to consummate the transactions contemplated hereby, and this Agreement constitutes a legal, valid, and binding obligation of Buyer.

11.2     No approval, consent, license, permit, waiver or other authorization is required in connection with the execution or delivery by Buyer of this Agreement, the performance of Buyer's obligations under this Agreement, or the consummation of the transactions contemplated herein.

11.3     There are no legal or governmental proceedings that have been commenced by or against Buyer or, to Buyer's knowledge, that have been threatened against or may affect Buyer or any of Buyer's properties, assets, or operations, or that challenge, or that may have the effect of preventing, delaying, making illegal, or otherwise interfering with, the transactions contemplated by this Agreement. There are no court orders or directives issued by any governmental agency to which Buyer or any of Buyer's assets are subject that may adversely affect Buyer or that challenge, or that may have the effect of preventing, delaying, making illegal, or otherwise interfering with, the transactions contemplated by this Agreement, or that affect the enforceability of this Agreement against Buyer or impair Buyer's ability to consummate the transactions contemplated by this Agreement.

11.4     No broker, finder, or other person is or shall be entitled to any commissions or finder's fees in connection with the transactions contemplated hereby by reason of any action taken by Buyer.

11.5     Buyer has no affiliation or relationship with the Debtor, any insider(s) (within the meaning of Bankruptcy Code 101 (31)) of the Debtor, or any creditor(s) of the Debtor whatsoever, other than the following:

_____.

11.6     Buyer expressly acknowledges and agrees this Agreement and Seller's efforts to sell the Acquired Assets more broadly are subject to Bankruptcy Court approval and a competitive sale process through which Seller will be permitted to advocate for a sale of the Acquired Assets to a different purchaser if deemed appropriate by Seller.

12.     *Access to Information and Facilities*: Seller agrees that, prior to the Closing Date, Buyer and its respective representatives shall, upon reasonable notice and so long as such access does not unreasonably interfere with the business operations of Debtor, have reasonable access during normal business hours to all facilities and shall be entitled to make such reasonable investigation of the properties, businesses and operations of Debtor (including conducting a physical inventory

of the Assets) and such examination of the books and records and financial condition of Seller as it reasonably requests and to make extracts and copies to the extent necessary.

13. ***Conduct of Business and Maintenance of Assets***: Except as otherwise expressly contemplated by this Agreement or with the prior written consent of Buyer, and subject in all cases to Seller's compliance with the prohibitions and restrictions of the Bankruptcy Code or any Orders entered by the Bankruptcy Court, from the date hereof until the Closing Date, Seller shall: (a) use commercially reasonable efforts to (i) conduct the Business of the Debtor in the ordinary course of business, (ii) preserve the present business operations, organization and goodwill of the Business, (iii) maintain the Acquired Assets in the ordinary course of business, and (iv) preserve the present relationships with persons having business dealings with the Debtor (including suppliers of the Business).

14. ***Notification of Certain Matters***: Seller shall give prompt written notice to Buyer of (a) the occurrence or nonoccurrence of any event that would be likely to cause either (i) any representation or warranty of Seller contained in this Agreement, or in connection with the transactions contemplated hereunder, to be untrue or inaccurate in any material respect at any time from the date hereof to the Closing or (ii) directly or indirectly, any material adverse effect on the Acquired Assets, or (b) any material failure of Seller to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by it hereunder

15. ***Bankruptcy-Related Matters:***

15.1 *Bankruptcy Actions:* Seller will provide Buyer with a reasonable opportunity to review and comment upon all motions, applications, petitions, schedules and supporting papers relating to the transactions contemplated by this Agreement prepared by (including forms of Orders and Notices to interested parties) prior to the filing thereof in the Bankruptcy Case. All motions, applications, petitions, schedules and supporting papers prepared by Seller and relating to the transactions contemplated by this Agreement to be filed on behalf of Seller after the date hereof must be reasonably satisfactory in form and substance to Buyer. Each of Buyer and Seller will promptly take such actions as are reasonably requested by the other party to assist in obtaining entry of the Sale Order and the Bidding Procedures Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for purposes, among others, of providing necessary assurances of performance by Seller of its obligations under this Agreement and the Transaction Documents and demonstrating that Buyer is a good faith buyer under Section 363(m) of the Bankruptcy Code. Each of Buyer and Seller will promptly take such actions as are reasonably requested by the other party to assist in obtaining any necessary consents to the consummation of the transactions contemplated by this Agreement.

15.2 *Other Bids:* Pursuant to the terms of the proposed Bidding Procedures Order, Seller will solicit bids from other prospective Buyers for the sale of all or substantially all of the Acquired Assets, on terms and conditions substantially the same in all respects to this Agreement (or more favorable terms to Seller) and in accordance with the procedures set forth in the proposed Bidding Procedures Order; provided that, following

completion of the Competitive Sale until the Closing, Seller shall not, directly or indirectly, through any officer, director, employee, agent, professional or advisor, solicit any proposal for an alternative transaction for all, or any portion of, the Acquired Assets.

15.3    *Other Bankruptcy Matters*: Seller and Buyer acknowledge that this Agreement and the sale of the Acquired Assets are subject to Court approval. Seller and Buyer acknowledge that to obtain such approval, Seller must demonstrate that Seller has taken reasonable steps to obtain the highest and otherwise best offer possible for the Acquired Assets, and that such demonstration shall include giving notice of the transactions contemplated by this Agreement to creditors and interested parties as ordered by the Bankruptcy Court. In the event an appeal is taken or a stay pending appeal is requested, from either the Bidding Procedures Order or the Sale Order, Seller shall immediately notify Buyer of such appeal or stay request and shall promptly provide to Buyer a copy of the related notice of appeal or Order of stay. Seller shall also provide Buyer with written notice of any motion or application filed in connection with any appeal from either of such Orders. From and after the Effective Date, Seller shall not take any action which is intended to (or is reasonably likely to), or fail to take any action the intent (or the reasonably likely result) of which failure to act is to, result in the reversal, voiding, modification or staying of Bidding Procedures Order.

## 16.    *Conditions to Closing:*

16.1    *Conditions to Parties' Obligations:* The obligations of Buyer and Seller under this Agreement are subject to satisfaction of the following conditions precedent on or before the Closing Date, any one or more of which may be waived (but only in writing) by Buyer and Seller (provided that no such waiver shall be deemed to have cured any breach of any representation, warranty or covenant made in this Agreement): (a) all authorizations, consents, filings and approvals necessary to permit the parties to perform the transactions contemplated hereby shall have been duly obtained, made or given, shall be in form and substance, reasonably satisfactory to the Parties, shall not be subject to the satisfaction of any condition that has not been satisfied or waived and shall be in full force and effect; and (b) no order shall be issued by and no proceeding shall be pending before any governmental authority seeking or threatening to stay, restrain or prohibit the consummation of the transactions contemplated by this Agreement.

16.2    *Conditions to Performance by Buyer:* The obligations of Buyer under this Agreement are subject to satisfaction of the following conditions precedent on or before the Closing Date, any one or more of which may be waived (but only in writing) by Buyer: (a) Seller shall make all of the representations and warranties set forth in this Agreement on and as of the Closing Date, and such representations and warranties shall be true and correct as of the Closing Date in all material respects; (b) Seller shall have performed and complied in all material respects with all its respective obligations under this Agreement which are to be performed or complied with by it prior to or at the Closing; (c) the Sale Order shall approve and authorize the transactions contemplated by this Agreement, shall have been entered on the docket of the Bankruptcy Court, and shall have become a Final Order; (d) there shall not have occurred a Material Adverse Change

since the date hereof; and (e) Seller shall have delivered to Buyer all of the Closing deliverables required by this Agreement.

16.3    *Conditions to Performance by Seller*: The obligations of Seller under this Agreement are subject to satisfaction of the following conditions precedent on or before the Closing Date, any one or more of which may be waived (but only in writing) by Seller: (a) Buyer shall make all of the representations and warranties set forth in this Agreement on and as of the Closing Date, and such representations and warranties shall be true and correct as of the Closing Date in all material respects; (b) Buyer shall have performed and complied in all material respects with all its respective obligations under this Agreement which are to be performed or complied with by it prior to or at the Closing; (c) the Bankruptcy Court shall have entered an Order approving the execution of this Agreement by Seller and the consummation by Seller of the transactions contemplated herein; and (d) Buyer shall have delivered to Seller all of the Closing deliverables required by this Agreement.

17.    **Termination**: This Agreement may be terminated prior to the Closing upon written notice to the non-terminating Party(ies) as follows: (i) by mutual written agreement of the Parties at any time; (ii) in the event of a material misrepresentation in this Agreement by Buyer or Buyer's Control Person, by Seller immediately upon written notice to Buyer; (iii) in the event of a material breach of this Agreement by Buyer or Buyer's Control Person, by Seller upon Buyer's or Buyer's Control Person's failure to cure such breach after ten (10) days' advance written notice; (iv) in the event of a material breach of this Agreement by Seller, by Buyer upon Seller's failure to cure such breach after ten (10) days' advance written notice; (v) by Buyer or Seller if there shall be in effect a Final Order restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated herein; (vi) automatically upon the Bankruptcy Court's entry of an order approving an Acquisition Proposal for all, or any portion of, the Acquired Assets; provided, that if in connection with such an Acquisition Proposal, the Buyer is the Back-Up Bidder [1], then Buyer shall not be permitted to terminate this Agreement until after the earlier of (A) the Closing of such acquisition Proposal or (B) the Outside Date; (vii) by Buyer if the Bankruptcy Court does not enter the Bidding Procedures Order on or before September 12, 2019 (viii) by Buyer if the Bankruptcy Court does not enter the Sale Order on or before October 17, 2019; (ix) by Buyer on any day on or after the Outside Date if the Closing shall not have occurred by such date (or by such later date as shall be mutually agreed to by Buyer and Seller in writing), unless the Closing has not occurred due to a material failure of Buyer to perform or observe its obligations as set forth in this Agreement required to be performed or observed by it on or before the Closing Date; (x) by Seller on any day on or after the Outside Date if the Closing shall not have occurred by such date (or by such later date as shall be mutually agreed to by Buyer and Seller in writing), unless the Closing has not occurred due to a material failure of Seller to perform or observe its obligations as set forth in this Agreement required to be performed or observed by it on or before the Closing Date; and (xi) by Buyer if (A) the Bankruptcy Case is dismissed or converted into a case under Chapter 7 of the Bankruptcy Code, or (B) anyone other than Seller is appointed as

---

[1] 321 Capital Partners shall select the successful bid (the "Winning Bid") and a back-up bid (the "Back-Up Bid") during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid, and the holder thereof (the "Winning Bidder"), and a Back-Up Bid, and the holder thereof (the "Back-up Bidder").

trustee of the Debtor's bankruptcy estate. Except as expressly set forth in this Section above, Buyer's obligations arising under this Agreement are irrevocable.

18.    *Return of Deposit:* If this Agreement is terminated or the transactions hereby are not consummated for any reason other than a termination by Seller based on Buyer's material misrepresentation or material breach, then Escrow Agent shall pay the Good Faith
Deposit to Buyer within three (3) business days following the date of such termination.

19.    *Further Assurances*: The Parties agree to use reasonable efforts to take such further actions as may be reasonably necessary following the Closing Date to effectuate the transactions contemplated by this Agreement. The Parties agree to execute and deliver any customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to the Parties, as may be required to give effect to this Agreement even if not specifically referenced in this Agreement.

20.    *Notices:* All notices permitted or required to be made under this Agreement shall be made in writing and shall be deemed to have been given when delivered either: (a) in person, (b) by electronic mail, or (c) one (1) business day after being deposited with a nationally-recognized overnight carrier, and addressed to the address set forth for each Party in the General Provisions. Any notice sent by other means shall be deemed operative only upon actual receipt. A Party's address set forth in this Agreement may be changed by a Party upon ten (10) days' written notice given to all Parties sought to be charged with notice of such change. The refusal of any Party to accept delivery or the inability to deliver because of changed address of which no notice was given shall be deemed the equivalent of receipt.

21.    *Miscellaneous*:

21.1    If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

21.2    This Agreement is for the sole benefit of the Parties and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

21.3    No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

21.4    Seller reserves all rights, claims, and remedies (i) against all parties that are obligated to Seller on the indebtedness secured by the Acquired Assets or that have pledged any assets as collateral for such indebtedness, and (ii) with respect to any assets other than the Acquired Assets that have been pledged as collateral for such indebtedness, and Seller waives no such rights, claims, or remedies, except solely with respect to the Acquired Assets as of the Closing Date.

21.5    This Agreement shall bind and inure to the benefit of the Parties and their respective personal representatives, heirs, successors, and assigns. Neither this Agreement nor any of the rights, interests, or obligations hereunder shall be assigned by a Party without the prior written consent of the other Party.

21.6    All negotiations, considerations, representations, and understandings between the Parties with respect to the subject matter of this Agreement are incorporated and merged herein. This Agreement may be modified or altered only by agreement in writing between the Parties.

21.7    This Agreement may be signed in any number of separate copies, each of which shall be effective as an original, but all of which taken together shall constitute a single document. An electronic transmission or other facsimile of this Agreement or any related document shall be deemed an original and shall be admissible as evidence of the document and the signer's execution.

21.8    Time is of the essence with respect to the performance of the obligations under this Agreement.

21.9    All representations and warranties made in this Agreement or any other document furnished in connection with this Agreement shall survive the execution, delivery, and/or termination of this Agreement and the Closing.

21.10   This Agreement shall be governed by and pursuant to the internal laws of the State of North Carolina, except with respect to conflict of laws principles. The Bankruptcy Court shall be the exclusive venue to resolve any dispute that should arise between the Parties in connection with this Agreement.

21.11   Buyer hereby irrevocably consents to the personal jurisdiction of the Bankruptcy Court in any action, claim, or other proceeding arising out of any dispute in connection with this Agreement, any rights or obligations hereunder, or the performance of such rights and obligations. Buyer hereby irrevocably consents to the service of a summons and complaint and other process in any action, claim, or proceeding brought by Seller in connection with this Agreement, any rights or obligations hereunder, or the performance of such rights and obligations, on behalf of themselves or their property, by First Class U.S. Mail, postage prepaid, delivered to Buyer at Buyer's address set forth in the General Provisions; provided, however, nothing in this Section shall affect Seller's right to serve legal process in any other manner permitted by applicable law.

21.12  If legal proceedings are instituted to enforce any provision of this Agreement, the prevailing party in the proceeding shall be entitled to recover from the non-prevailing party reasonable attorneys' fees and court costs incurred in connection with the proceeding.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the Execution Date.

**SELLER:**

_____

Brian T. Bulter, as President and the Court authorized representative of Debtor, Butler Specialties, Inc. T/A Butler Built Motorsports Equipment, Inc.

**BUYER:**

By: _____

Printed Name: _____

Title: _____

**BUYER'S CONTROL PERSON:**

_____

Printed Name: _____

**CONFIDENTIALITY AGREEMENT**                                    **Butler Specialties, Inc. - 2019**

**PLEASE COMPLETE AND RETURN AGREEMENT VIA EMAIL: CA@321CAPITAL.COM OR FAX: (443) 320-9225**

This Non–Disclosure Agreement, (hereinafter "Agreement"), which shall be regarded as a mutual and reciprocal contract between the Parties, is made and entered into as of this ___ day of_____, 2019 by and between <u>Three Twenty-One Capital Partners</u> ("Investment Banker") and _____, ("Recipient").

WHEREAS, the Parties hereto are desirous of establishing a mutually–beneficial business relationship for the entirety sale, refinance, investment, joint venture partnership, or other related transaction of our client, herein referred to as Butler Specialties, Inc. ("The Company"). The Parties hereto are prepared to disclose information or data of a confidential nature, including but not limited to financial information, client information, business concepts, business strategies, business opportunities, business relationships and sources of capital and financing.

NOW THEREFORE, in consideration of the mutual agreements contained herein,

1. Except as otherwise required by law, the Parties agree to hold all confidential or proprietary information or trade secrets ("information") in trust and confidence and agrees that it shall be used only for the contemplated purpose, and shall not be used for any other purpose or disclosed to any third party under any circumstances whatsoever except as may be necessary to complete the desired results above.

2. When requested all materials are to be returned or destroyed and no copies may be made or retained of any written information supplied.  Notwithstanding the foregoing, one copy of the materials may be kept for legal, compliance, or other internal document retention policies, including copies made during automated back-up procedures.

3. This information shall not be disclosed to any employee, consultant or third party unless the said party agrees to be bound by the terms of this Agreement.

4. It is understood that either Party would have no obligation with respect to any information known by the other Party in this Agreement or as may generally be known within the industry prior to the date of this Agreement, or that shall become common knowledge within the industry thereafter.

5. The Parties acknowledge the information disclosed herein is proprietary or trade secrets and in the event of any breach, either Party shall be entitled to seek injunctive relief as a cumulative and not necessarily successive or exclusive remedy to claim for monetary damages.

6. This agreement shall be binding upon and inure to the benefit of the Parties, their successors and assigns.

7. Each Party acknowledges that this Agreement is a valid and legally binding obligation that has been executed by an authorized representative. A copy of this Agreement transmitted via facsimile, bearing the signature (or e-signature) of one or both Parties shall be deemed to be of the same legal force and effect as an original of the Agreement bearing such signature(s) as originally written by such one or both Parties.

8. This agreement expires upon one year of the date of execution of this document.

In witness of this, the Investment Banker and the Recipient have executed this Agreement as of the day and year first written above.

Signature:                                              Three Twenty-One Capital Partners:

_____                        _____

Print Name: _____                      Date: _____

Company: _____

Title: _____                      

Date:_____                        THREE TWENTY-ONE
                                                       CAPITAL PARTNERS

Three Twenty-One Capital Partners – 5950 Symphony Woods Rd. - Suite 200 - Columbia

Exhibit  B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT ON NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 19-50417 |
| BUTLER SPECIALTIES INC., T/A | ) | |
| BUTLERBUILT MOTORSPORTS | ) | Chapter 11 |
| EQUIPMENT, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## SALE NOTICE

On _____, 2019, the U.S. Bankruptcy Court for the Middle District of North Carolina (the "Court") granted the Motion for Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of Assets, (II) Approving Form of Asset Purchase Agreement, (III) Scheduling Competitive Sale and Sale Approval Hearing, and (IV) Approving Sale Free and Clear of Liens to Good Faith Purchaser (the "Motion") and entered an Order in the above-captioned bankruptcy case approving the Bidding and Sale Procedures proposed by Butler Specialties, Inc. T/A Butler Built Motorsports Equipment, Inc. (the "Debtor") and 321 Capital Partners, LLC ("321 Capital Partners") which relate to the sale of the Debtor's assets. The Bidding and Sale Procedures are as follows:

**ASSETS TO BE SOLD:**  The Debtor seeks to sell all of the Debtor's right, title, and interest in and to that Real property described as 70 Pitts School Road, Concord, North Carolina (the "Real Property" or "Real Property Assets"), and inventory, accounts, receivable, vehicles, furniture, fixtures and equipment, its intellectual property, its miscellaneous tangible personal property, and other intangible assets (the "Personal Property Assets").  Collectively, the Real Property Assets and Personal Property Assets are referred to as the "Assets."

The Real Property Assets and Personal Property Assets may be sold collectively or separately.  A Qualified Bid shall specify whether the Bidder is placing a bid on the Real Property Assets, the Personal Property Assets, or the Real Property Assets and Personal Property Assets together.

**BID DEADLINE:** Any person(s) or entities wishing to submit a bid to purchase the Assets and/or participate in the competitive sale of the Assets (the "Competitive Sale") shall: (1) immediately deliver a properly and validly executed *Confidentiality and Non-Disclosure Agreement* in the form attached hereto (an "NDA") to: ca@321capital.com and, if determined by 321 Capital Partners to be a "Qualified Bidder," then (2) deliver, **on or before September 13, 2019** (the "Bid Deadline") (a) an executed Asset Purchase Agreement in a form substantially similar to the form attached hereto (an "APA") and (b) either a version of the executed APA marked to show the changes

## EXHIBIT C

against the attached APA or an electronic version in Word of the executed APA to: 321 Capital Partners, LLC, 5950 Symphony Woods Road, Columbia MC, 21044, or ca@321capital.com.

**REQUIREMENTS FOR A QUALIFIED BIDDER**: Immediately upon receipt of an NDA, 321 Capital Partners shall endeavor to determine whether an interested purchaser qualifies to participate in the Competitive Sale (a "Qualified Bidder"). 321 Capital Partners shall retain complete discretion to determine whether an interested person or entity is a Qualified Bidder. At a minimum, a Qualified Bidder will have the financial wherewithal to consummate the proposed transaction, including the willingness to provide detailed financial information to 321 Capital Partners to verify such financial wherewithal.

321 Capital Partners, LLC, shall endeavor to notify any person or entity who has delivered an NDA regarding whether the person or entity has been approved as a Qualified Bidder within one (1) business day after 321 Capital Partners approves such person or entity as a Qualified Bidder.

**REQUIREMENTS FOR A QUALIFIED BID**: 321 Capital Partners shall retain complete discretion to determine whether an APA received qualifies a Qualified Bidder to participate in the auction and/or in the Competitive Sale (a "Qualified Bid").[1] At a minimum, a Qualified Bid must have the following characteristics, unless otherwise ordered by the Court.

(1)     A Qualified Bid must be timely submitted on or before the Bid Deadline.

(2)     A Qualified Bid makes adequate representations and warranties regarding the Qualified Bidder's affiliation or relationship with the Debtor, any insider(s) of the Debtor, or any creditor(s) of the Debtor.

(3)     A Qualified Bid requires the Qualified Bidder to make a good faith deposit in an amount equal to ten percent (10%) of the total consideration to be paid for the assets to be purchased by the Qualified Bidder.

(4)     A Qualified Bid warrants that it is not subject to any additional due diligence, any financing contingency(ies), or any further board or similar corporate approval.

(5)     A Qualified Bid provides that it is irrevocable by the Qualified Bidder unless and until three (3) days after a Court order approving a sale of the assets pursuant to which the Qualified Bidder does not hold the "Winning Bid" or "Back-Up Bid" (each defined below).

(6)     A Qualified Bid commits to a closing on the purchase as soon as possible after entry of an order approving the sale, but not later than three (3) business days after such order has become a final order (the "Closing").

---

[1] If only one Qualified Bidder participates by placing a bid by the Bid Deadline, that Qualified Bidder's bid will be the Winning Bid and no Competitive Sale will be held.  A Competitive Sale will be held only if more than one Qualified Bidder places a bid by the Bid Deadline.

# EXHIBIT C

(7)    A Qualified Bid acknowledges that the sale is "as-is, where-is" with no warranties express or implied by the Debtor, other than a warranty that the Debtor has done nothing to impair title or Assets.

(8)    A Qualified Bid represents and warrants to the Debtor that the Qualified Bidder (A) has relied solely upon the Qualified Bidder's own independent review, investigation, and/or inspection of the Assets in making the bid and (B) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law or otherwise, by the Debtor regarding the ssets.

(9)    A Qualified Bid includes no breakup fee, expense reimbursement, or similar payment obligation burdening the Debtor.

(10)    A Qualified Bid must allocate the proposed purchase price among the Real Property Assets, Personal Property Assets, or Assets.

**DUE DILIGENCE**: All due diligence must be completed by any Qualified Bidders on or before the Bid Deadline such that all bids will be **free of all contingencies** other than the Court's approval of the sale free and clear of liens, with any liens transferring to the sale proceeds. Subject to the Qualified Bidder's execution of the NDA, 321 Capital Partners shall provide Qualified Bidders with any documents requested prior to the Bid Deadline that are in 321 Capital Partners' possession or are readily available to 321 Capital Partners.  321 Capital Partners shall not be obligated to furnish access to any information of any kind regarding the assets after the Bid Deadline.

**SELECTION OF QUALIFIED BIDS**: After a Qualified Bidder submits an APA, 321 Capital Partners may, its complete discretion, communicate with the Qualified Bidder and request any additional information deemed necessary to evaluate whether the bid should be accepted as a Qualified Bid.  If more than one Qualified Bid is received, 321 Capital Partners will send, on or before September 16, 2019, a written Competitive Sale invitation to all Qualified Bidders submitting Qualified Bids.

**DESIGNATION OF COMPETITIVE SALE PARTICIPANTS**: All Qualified Bidders wishing to bid at the Competitive Sale shall appear and participate at the Competitive Sale—either in person or telephonically—through a duly authorized representative. On or before September 17, 2019, all holders of Qualified Bids shall notify 321 Capital Partners in writing of the name and relationship to the Qualified Bidder of any representative who will appear at the Competitive Sale on the Qualified Bidder's behalf and a certification that the identified representative(s) will have the full authority to bid at the Competitive Sale on behalf of the Qualified Bidder, *provided, however*, that 321 Capital Partners will have the ability to exclude any identified representative that it reasonably believes would be disruptive to the  Competitive Sale process.

**LOCATION OF COMPETITIVE SALE**:  if more than on Qualified Bid is received, then 321 Capital Partners shall conduct a Competitive Sale at the law office of **Nardone Law Firm, PLLC, 241 Church Street NE, Concord, North Carolina, 28025** or in such other location 321 Capital Partners designates upon advance written notice to holders of Qualified Bids.

## EXHIBIT C

**DATE AND TIME OF COMPETITIVE SALE:** The Competitive Sale will be on September 19, 2019 at 11:00 a.m.

**SALE PROCEDURES:** The following rules shall govern the Competitive Sale.

(1)    Only Qualified Bidders submitting Qualified Bids and any Stalking Horse are eligible to participate in the Competitive Sale. Other than Qualified Bidders and their representative, the only parties permitted to attend the Competitive Sale are the IRS and the IRS's counsel, the NCDOR and the NCDOR's counsel, 321 Capital Partners' representatives, and the Debtor's counsel.

(2)    Prior to the Competitive Sale, 321 Capital Partners shall select the Qualified Bid that, in 321 Capital Partners' complete discretion, reflects the highest or otherwise best value for the Assets as the Competitive Sale's opening bid. 321 Capital Partners shall then commence the Competitive Sale by announcing the opening bid.

(3)    Thereafter, Competitive Sale participants may submit bids that are higher and better than a prior bid in increments of at least $10,000.00 until 321 Capital Partners selects a successful bid; *provided however*, that 321 Capital Partners shall retain complete discretion to adjust the overbid increments upward or downward during the Competitive Sale.

(4)    321 Capital Partners may adjourn the Competitive Sale and/or adopt supplemental Competitive Sale rules or procedures in order to facilitate a more effective Competitive Sale.

(5)    321 Capital Partners shall select the Winning Bid and a Back-Up Bid during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid and Back- Up Bid.

(6)    The Court will conduct an approval hearing to consider whether to approve the sale pursuant to § 363 of the Code on October 1, 2019 at 2:00 p.m., unless the Competitive Sale has adjourned to a later date and time.

**CONSUMMATION OF SALE:** If the Court approves a sale based on the Winning Bid, then the holder of the Winning Bid shall close on the purchase as soon as possible after entry of an order approving the sale, but not later than three (3) business days after such order has become a final order. If the holder of the Winning Bid fails to consummate the purchase, then the holder of the Back-Up Bid shall close on the purchase within twenty (20) days of entry of the order approving the sale becoming a final order.

# EXHIBIT C

**RESERVATION OF RIGHTS**: 321 Capital Partners expressly reserves the right to determine whether any bid is a Qualified Bid and whether any Qualified Bid is the Winning Bid or a Back-Up Bid.  The Debtor and 321 Capital Partners expressly reserve the right to seek all available damages from the holder of the Winning Bid or the holder of the Back-Up Bid if such bidder wrongfully fails to consummate the purchase pursuant to these Bidding and Sale Procedures.


This the _____ day of _____, 2019.

/s/ Kristen S. Nardone_____
KRISTEN S. NARDONE
N.C. Bar No. 28063
Attorney for the Debtor

OF COUNSEL:

Nardone Law Firm, PLLC
PO Box 1394
Concord, NC  28026-1394
704-784-9440


# EXHIBIT C

## EXHIBIT D

## BIDDING PROCEDURES ORDER

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:

|  |  |  |
|---|---|---|
| BUTLER SPECIALTIES, INC., T/A BUTLERBUILT MOTORSPORTS EQUIPMENT, INC. | ) ) ) ) | Case No: 19-50417 |
| Debtor. | ) ) ) | Chapter 11 |

## ORDER APPROVING BIDDING AND SALE PROCEDURES IN CONNECTION WITH THE SALE OF ASSETS AND SCHEDULING COMPETITIVE SALE AND SALE APPROVAL HEARING

THIS MATTER came before the Court for hearing on _____, 2019

upon the Motion by Butler Specialties, Inc., T/A Butlerbuilt Motorsports Equipment, Inc. (the

"Debtor") for Order (I) Approving Bidding and Sale Procedures in Connection with the Sale of

Assets, (II) Approving Form of Asset Purchase Agreement, (III) Scheduling Competitive Sale

and Sale Approval Hearing, and (IV) Approving Sale Free and Clear of Liens to Good Faith

Purchaser (the "Motion"). At the hearing, Kristen S. Nardone appeared on behalf of the Debtor,

Robert E. Price, Jr. appeared on behalf of the Office of the United States Bankruptcy

Administrator, and Nathan Strup appeared on behalf of the Internal Revenue Service. Based

**EXHIBIT D**

upon a review of the Motion, the record in this case, the evidence presented at the hearing and arguments of counsel, the Court finds that the relief requested in the Motion is in the best interest of the Debtor, the Debtor's creditors, and the Debtor's bankruptcy estate.  In support hereof, the Court finds as follows:

1. On April 23, 2019 (the "Petition Date"), the Debtor commenced a case under Chapter 11 of Title 11, United States Code in this Court.  The Debtor continues to operate its business and manage its properties as Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor's principal business is the manufacture of auto racing seats and accessories.

3. No trustee or examiner has been appointed in Debtor's Chapter 11 case, and no creditors or other official committee has been appointed herein pursuant to Section 1102 or the Bankruptcy Code.

4. On July 17, 2019, this Court approved the hiring of Three Twenty-One Capital Partners, LLC ("321 Capital Partners") as investment banker to facilitate a sale under Section 363 of the Bankruptcy Code (a "363 Sale").

5. 321 Capital Partners investigated the Assets of the Debtor and is marketing the same.

6. 321 Capital Partners has not located a "stalking horse" bidder to date but continues to seek the same.  If a stalking horse bidder arises, 321 Capital Partners will continue to market the Debtor's business and assets to other interested strategic buyers or investors.  In the event competitive bids are received by Debtor, a stalking horse's offer would be an opening bid

**EXHIBIT D**

at an auction sale, and other interested parties would be invited to submit competitive bids (the "Auction" or "Competitive Sale").

       7.     The Bidding and Sale Procedures shall be as follows:

a.     321 Capital Partners will have a marketing period ending on September 13, 2019 (the "Bid Deadline") to solicit offers for the Assets.

      b.     Any person or entities wishing to participate in the Competitive Sale[1] (process shall deliver as soon as reasonably possible a properly and validly executed Confidentiality and Non-Disclosure Agreement in the form attached as "Exhibit B" (an "NDA") to Devin Hudgins, 321 Capital Partners, 5950 Symphony Woods Road, Columbia, MD, 21044, ca@321capital.com, or via facsimile 443-320-9225.

      c.     Upon receipt of an NDA, 321 Capital Partners will determine whether an interested purchaser qualifies to participate in the Competitive Sale (a "Qualified Bidder"). 321 Capital Partners will retain complete discretion to determine whether an interested entity is a Qualified Bidder. At a minimum, a Qualified Bidder will have the financial wherewithal to consummate the proposed transaction, including the willingness to provide details financial information to 321 Capital Partners to verify such financial wherewithal.

      d.     321 Capital Partners will notify an entity who has delivered an NDA regarding whether or not the entity has been approved as a Qualified Bidder within one (1) business day following the date upon which 321 Capital Partners has approved the same as a Qualified Bidder.

      e.     If (1) there is a stalking horse bid and a Qualified Bid[2]) is received on or before the Bid Deadline, or (2) there is no Stalking Horse Bid and more than one Qualified Bid is received on or before the Bid Deadline, then 321 Capital Partners shall conduct a competitive sale of the Assets (the "Competitive Sale") pursuant to these Bidding and Sale Procedures on Thursday, September 19, 2019, at 11:00 a.m. in the office of the Nardone Law Firm, PLLC located at 241 Church Street NE, Concord, North Carolina (the "Sale Location").

      f.     In order to attend the Competitive Sale, a Qualified Bidder must deliver, on or before the Bid Deadline, (i) and executed *Asset Purchase Agreement* in a form substantially similar to that appearing as attached "Exhibit A" (an "APA") and (ii) either a version of the executed APA marked to show the changes against the APA attached as "Exhibit A" or an

---

[1] Competitive Sale shall mean if (1) there is a stalking horse bid and a Qualified Bid is received on or before the Bid Deadline, or (2) there is no Stalking Horse Bid and more than one Qualified Bid is received on or before the Bid Deadline, then 321 Capital Partners shall conduct a competitive sale of the Assets (the "Competitive Sale") pursuant to these Bidding and Sale Procedures on Thursday, September 19, 2019, at 11:00 a.m. in the office of the Nardone Law Firm, PLLC located at 241 Church Street NE, Concord, North Carolina (the "Sale Location").

[2] A Qualified Bid is a bid placed by a Qualified Bidder. 321 Capital Partners shall determine what constitutes a Qualified Bidder.

**EXHIBIT D**

electronic version in Word of the executed APA to: Devin Hudgins, 321 Capital Partners, 5950 Symphony Woods Road, Columbia, MD, 21044, ca@321capital.com.

      g.     321 Capital Partners shall retain complete discretion to determine whether any APA submitted qualifies as a Qualified Bidder to participate in the Competitive Sale (a "Qualified Bid"). At a minimum, a Qualified Bid must have the following characteristics, unless otherwise ordered by the Court:

      (i)     Is timely submitted on or before the Bid Deadline;

      (ii)    Makes adequate representations and warranties regarding the Qualified Bidder's affiliation or relationship with the Debtor, any insider(s) of the Debtor, or any creditor(s) of the Debtor;

      (iii)   Requires the Qualified Bidder to make a good faith deposit in the amount equal to ten percent (10%) of the total consideration to be paid for the assets to be purchased by the Qualified Bidder;

      (iv)   Warrants that it is not subject to any additional due diligence, any financing contingencies, or any further board or similar corporate approval;

      (v)    Provides that it is irrevocable by the Qualified Bidder until three (3) days after a Court order approving a sale of the assets pursuant to which the Qualified Bidder does not hold the "Winning Bid" or "Back-Up-Bid"[3];

      (vi)   Commits to a closing on the purchase as soon as possible after entry of an order approving the sale, but not later than three (3) business days after such order has become a final order (the "Closing").

      (vii)   Acknowledges that the sale is "as-is, where-is" with no warranties express or implied by the Debtor or 321 Capital Partners;

      (viii)  Represents and warrants to the Debtor and 321 Capital Partners that the Qualified Bidder (A) has relied solely upon the Qualified Bidder's own independent review, investigation, and/or inspection of the assets in making the bid and (B) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law or otherwise, by the Debtor or 321 Capital Partners regarding the assets;

      (ix)   Includes no breakup fee, expense reimbursement, or similar payment obligation;

      (x)    Must be on substantially similar terms as, or better terms than, the APA and must specify whether the purchase is for the Assets or the Real Property Assets or Personal Property Assets separately; and

      (xi)   Must allocate the propose purchase price among the Real Property Assets or Personal Property Assets.

      h.     All due diligence shall be completed prior to the Bid Deadline, such that all bids at the Competitive Sale will be free of all contingencies other than the Court's approval

---

[3] 321 Capital Partners shall select the successful bid (the "Winning Bid") and a back-up bid (the "Back-Up Bid") during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid, and the holder thereof (the "Winning Bidder"), and a Back-Up Bid, and the holder thereof (the "Back-up Bidder").

**EXHIBIT D**

of the sale free and clear of liens, with any liens transferring to the sale proceeds. Subject to execution of the NDA, 321 Capital Partners shall provide potential bidders with any and all documents requested prior to the Bid Deadline that are in its possession or readily available to it. 321 Capital Partners shall not be obligated to furnish access to any information of any kind whatsoever regarding the Assets after the Bid Deadline.

i.      After a Qualified Bidder submits an APA, 321 Capital Partners may, in its complete discretion, communicate with the Qualified Bidder and request any additional information deemed necessary to evaluate whether the bid should be accepted as a Qualified Bid.

j.      321 Capital Partners will send, on or before September 16, 2019, a written Competitive Sale invitation to all Qualified Bidders, if more than one Qualified Bidder participated in the bidding, who submitted a Qualified Bid. 321 Capital Partners shall disclose all Qualified Bids to any stalking horse bidder.

k.      If there is no stalking horse bid and only one Qualified Bid is received, the one Qualified Bid will be the "Winning Bid" and the Debtor will seek Court approval of the sale to the one Qualified Bidder pursuant to Section 363 of the Code at a hearing on or prior to October 1, 2019, subject to the Court's availability.

l.      If more than one Qualified Bid is received, 321 Capital Partners shall conduct a Competitive Sale on September 19, 2019 at the Nardone Law Firm, PLLC, 241 Church Street NE, Concord, North Carolina at 11:00 a.m.

m.      Except as otherwise provided herein, only Qualified Bidders submitting Qualified Bids and any stalking horse are eligible to participate in and attend the Competitive Sale. All Qualified Bidders wishing to bid at the Competitive Sale shall appear and participate at the Competitive Sale – either in person or telephonically – through a duly authorized representative. On or before September 17, 2019, all holders of Qualified Bids shall notify 321 Capital Partners in writing or the name and relationship to the Qualified Bidder or any representative who will appear at the Competitive Sale on the Qualified Bidder's behalf and a certification that the identified representative will have the full authority to bid at the Competitive Sale on behalf of the Qualified Bidder, provided, however, that 321 Capital Partners will have the ability to exclude any identified representative that 321 Capital Partners reasonably believes would be disruptive to the Competitive Sale process.

n.      Other than Qualified Bidders and their representatives, the only parties permitted to attend the Competitive Sale are the IRS and the IRS's counsel, the NCDOR and the NCDOR's counsel, 321 Capital Partners representative(s), and the Debtor's counsel.

o.      Prior to the Competitive Sale, 321 Capital Partners will select the Qualified Bid that it determines best reflects the highest or otherwise best value for the Assets, Real Property Assets and/or Personal Property Assets as the Competitive Sale's opening bid. 321 Capital Partners shall then commence the Competitive Sale by announcing the opening bid.

**EXHIBIT D**

p.      Thereafter, Competitive Sale participants may submit bids that are higher and better than a prior bid in increments of at least $10,000.00 until 321 Capital Partners selects a successful bid; provided, however, that 321 Capital Partners shall retain complete discretion to adjust the overbid increments upward or downward during the Competitive Sale.

q.      321 Capital Partners may adjourn the Competitive Sale and/or adopt supplemental Competitive Sale rules or procedures in order to facilitate a more effective Competitive Sale.

r.      321 Capital Partners shall select the successful bid (the "Winning Bid") and a back-up bid (the "Back-Up Bid") during the Competitive Sale and conclude the Competitive Sale by announcing the Winning Bid, and the holder thereof (the "Winning Bidder"), and a Back-Up Bid, and the holder thereof (the "Back-up Bidder").

s.      Subject to the Court's availability, the Court will conduct a hearing to consider whether to approve the sale pursuant to Section 363 of the Code on Tuesday, October 1, 2019 at 2:00 p.m. in the United States Bankruptcy Court, 601 West 4th Street, Suite 100, Winston-Salem, North Carolina. Any objections to the sale of the Assets, Real Property Assets and/or Personal Property Assets other than any objection based on the Winning Bid amount or based on any other conduct of the Competitive Sale shall be filed with the Court on or before September 25, 2019.

t.      If the Court approves a sale based on the Winning Bid, then the Winning Bidder shall close on the purchase no later than three (3) business days following the sale order becoming a final, non-appealable order, with the understanding that the Winning Bidder and 321 Capital Partners shall make all reasonable efforts, but not be required, to consummate the sale on or before the tenth (10th) day following entry of an order approving the sale. If the Winning Bidder fails to consummate the purchase, then the Back-Up Bidder shall close on the purchase no later than twenty (20) days after entry of an order approving the sale becoming a final, non-appealable order.

u.      Whichever of the Winning Bidder and Back-Up Bidder actually completes the purchase of the Assets, Real Property Assets and/or Personal Property Assets shall have thirty (30) days following the Closing to notify 321 Capital Partners of any executory contracts such purchaser wishes to assume in connection with the purchase, and all actions reasonably necessary to assume and assign said contracts pursuant to Section 365 of the Code shall be taken.

8.      The Debtor shall have the right to seek all available damages from the Winning Bidder or the Back-Up Bidder if such bidder wrongfully fails to consummate the purchase pursuant to these Bidding and Sale Procedures, except as otherwise agreed by 321 Capital Partners.

**EXHIBIT D**

9.    The Debtor has demonstrated sound business justification for this Court to grant the Motion.

10.    The Bidding and Sale Procedures set forth above are fair, reasonable, and appropriate and represent the best method for maximizing the value of the Debtor's Assets.

11.    The form and manner of the Sale Notice attached to the Motion (the "Sale Notice") is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Assets, the Bidding and Sale Procedures, the Competitive Sale, and the Sale Approval Hearing.  No other or further notice is required.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED, and DECREED** as follows:

1.    The Bidding and Sale Procedures with regard to the Assets and the authorization of the Debtor's engagement in conduct necessary to carry out the Bidding and Sale Procedures is approved;

2.    The form and manner of the Sale Notice is approved;

3.    The sale approval hearing shall be held on October 1, 2019 at 2:00 p.m. in the United States Bankruptcy Court for the Middle District of North Carolina, 601 West 4th Street, Suite 100, Winston-Salem, North Carolina, 27101.  At the hearing, the Court will consider:

a.    Whether to authorize the sale of the Assets free and clear of all liens, with any liens transferring to the proceeds of the sale to the same extent, validity, and priority as existing as of the date of the sale pending further order of the Court; and

b.    Whether the holder of the Winning Bid or Back-Up Bid is a good faith purchaser within the meaning of § 363(m) of the Bankruptcy Code and to grant such holders all of the protections provided thereby.

4.    The Debtor shall serve the Sale Notice as follows:

**EXHIBIT D**

      a.      Upon the Bankruptcy Administrator and those parties requesting notice via ECF pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure;

      b.      Upon the creditor mailing matrix in this Case via U.S. mail, postage prepaid; and

      c.      Upon any party interested in purchasing the Assets for whom the Debtor and/or 321 Capital Partners has a valid electronic mail address by electronic mail only.

END OF DOCUMENT

**EXHIBIT D**

## PARTIES IN INTEREST

William P. Miller
Bankruptcy Administrator

Kristen S. Nardone, Esq.
Attorney for the Debtor

Internal Revenue Service
Nathan Strup, Esq.

North Carolina Department of Revenue
Ronald Williams, Esq.

All Parties on Matrix

**EXHIBIT D**

# **EXHIBIT E**

## **BILL OF SALE**

FOR VALUE RECEIVE, Butler Specialties, Inc. T/A Butler Built Motorsports Equipment, Inc. (the "Debtor" and the "Seller") in the bankruptcy case pending as case 19-50417, before the U.S. Bankruptcy Court for the Middle District of North Carolina, hereby grants, sells, assigns, conveys, sets over and transfers to _____ ("Buyer"), whose address is _____, including Buyer's successors and assigns, all of Seller's right, title, and interest in and to: (1) those certain items of equipment and other fixed assets identified on Exhibit A, attached hereto and incorporated herein by reference;[1] and (2) those certain titled motor vehicles identified as a 2002 GMC Van and 2010 Lexus SUV.

Seller makes no representations or warranties regarding the condition of any of the assets conveyed herein, it being expressly understood and agreed that Buyer has had a full opportunity to inspect said assets to Buyer's satisfaction and Buyer accepts the assets in "as is, where is" condition.

Seller covenants and warrants that Seller has not placed or suffered to be placed any presently existing liens or encumbrances on the assets conveyed herein and will warrant and defend the title to the same against the lawful claims of all persons, claiming by, through, under, or on account of Seller.

IN WITNESS WHEREOF, Seller has executed, signed, and sealed this Bill of Sale and as of _____ _____, 2019.

_____

Brian T. Bulter, as President and the Court authorized representative of Debtor, Butler Specialties, Inc. T/A Butler Built Motorsports Equipment, Inc.

SWORN TO and subscribed before me
This _____ day of September, 2019.

_____

_____, Notary Public
My Commission Expires: _____

---

[1] Exhibit A will be prepared and attached after 321 Capital Partners, LLC investigates and determines the same and depending on whether the Winning Bidder(s) propose to purchase the Real Property Assets, Personal Property Assets, or all Assets.

**EXHIBIT E**